# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BARBARA LOWMAN, | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO. JKB-18-1146 |
| MARYLAND AVIATION ADMINISTRATION, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Barbara Lowman sued her employer, the Maryland Aviation Administration ("MAA") for sex discrimination and retaliation under federal and Maryland law. *See* 42 U.S.C. §§ 2000e-2(a), 2000e-3(a); Md. Code Ann., State Gov't §§ 20-606(a), 20-606(f). MAA moved to dismiss and, alternatively, for summary judgment. Lowman moved to stay consideration of summary judgment. The motions have been fully briefed, and no hearing is required. *See* Local Rule 105.6 (D. Md. 2016). For the reasons set forth below, the Court will deny in part and grant in part MAA's motion to dismiss; grant Lowman's motion to stay consideration of summary judgment; and deny without prejudice MAA's motion for summary judgment.

### I. *Allegations of the Complaint*

At the motion to dismiss stage, the Court takes the allegations of the complaint as true, *see, e.g., Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997), and construes any disputed allegations in the light most favorable to the plaintiff, *In re Royal Ahold N.V. Secs. & ERISA Litig.*, 351 F. Supp. 2d 334, 376 n.32 (D. Md. 2004) ("[R]esolution of [a] factual dispute is inappropriate when ruling on a motion to dismiss . . . ."). Here, the Court summarizes Lowman's allegations.

1

For seventeen years, Lowman worked for MAA, a division of the Maryland Department of Transportation operating as Baltimore Washington International Thurgood Marshall Airport ("BWI"). (Am. Compl. ¶ 2, ECF No. 10.) MAA hired Lowman as a paramedic in 2000. (*Id.* ¶ 14.) By 2001, MAA promoted her to a Lieutenant of Emergency Medical Services ("EMS"). (*Id.*) In 2014, Lowman switched from B-shift work to day work and, later that year, became Acting EMS Captain. (*Id.* ¶ 15.) At the time Lowman became Acting Captain, she had thirty-two years of fire service and EMS experience. (*Id.* ¶ 16.) As Acting Captain, she was tasked with organizing the EMS office and establishing protocols in preparation for the hiring of a permanent EMS Division Chief. (*Id.*)

In the years leading up to 2014, Lowman received "Exceeds Standards" in her overall performance evaluations. (*Id.* ¶ 17.) In 2014, she received "Exceeds Standards" and "Far Exceeds Standards" in every category of the evaluation. (*Id.*) And, in 2015, Northern Anne Arundel County Chamber of Commerce named her the BWI Fire & Rescue Firefighter/Paramedic of the Year. (*Id.* ¶ 18.)

Lowman applied for the Division Chief EMS position in 2015. (*Id.* ¶ 19.) The job posting listed "Preferred Qualifications," including graduation from high school, "four years as a career fire officer, in the rank of Lieutenant or above," and four years as an emergency medical technician-paramedic. (*Id.* ¶ 21.) Plaintiff alleges that prior MAA job postings listed "Minimum Requirements" instead of "Preferred Qualifications." (*Id.* ¶ 20.)

In March 2015, Lowman was interviewed for the Division Chief position. (*Id.* ¶ 22.) MAA internal hiring directions require an interview panel to consist of "at least three people one of whom should be a minority and one of whom should be female." (*Id.* ¶ 23.) The panel that interviewed Lowman comprised "[t]hree . . . white males" and one "African-American female." (*Id.* ¶ 23.)

The "African-American female" was an administrative assistant "with no experience in the fire and rescue field." (*Id.* ¶ 24.) While awaiting the results of her interview, Lowman was removed from the position of Acting EMS Captain, and, as a result, her pay was reduced. (*Id.* ¶ 30.) Later, MAA executive officers informed her that they removed her because they were opening a permanent EMS Captain position and did not want her favored over other candidates. (*Id.* ¶ 33.)

Another applicant, Charles Packard, was selected for the Division Chief position. (*Id.* ¶ 25.) Lowman alleges Packard had "less years of experience" than her. Packard also did not have the enumerated preferred qualification of holding a career fire officer position for four years. (*Id.* ¶ 26.) Lowman learned of Packard's selection on July 31, 2015 and filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 15, 2015. (*Id.* ¶ 25, 28; Compl. Ex. 1, ECF No. 1-3.) Lowman continued working for MAA and helped transition Packard into his new role. (Am. Compl. ¶ 27.)

Almost two years after Lowman filed the charge of discrimination, the EEOC determined that Lowman was, in fact, "denied a promotion to Division Chief of EMS position due to her sex (female) in violations of Title VII." (*Id.* ¶ 29.) EEOC relied on the fact that "the male selectee" did not meet the position's "minimum qualifications." (Compl. Ex. 2, ECF No. 1-4.) EEOC sent MAA a copy of the determination letter, dated June 14, 2017. (Am. Compl. ¶ 34.) "Around the time that MAA was notified of the EEOC complaint," Lowman requested a job reclassification so that she could apply for the open position of EMS Captain. (*Id.* ¶ 31, 46.) Even though Lowman followed the proper reclassification procedure, and even though "several other employees had reclassifications completed" at that time, Lowman never received a job reclassification. (*Id.* ¶ 47–48.) Lowman applied and interviewed for the Captain EMS position but, ultimately, withdrew her candidacy. (*Id.* ¶ 36)

3

On July 17, 2017,[1] the MAA Chief, Division Chief Packard, and a human resources representative met with Lowman and told her that she would be placed back on shift work, including a twenty-four-hour shift, after more than three years working purely day shifts. (*Id.* ¶ 32.) Lowman was given little notice of her new work schedule. (*Id.* ¶ 50.) The schedule change was brief, however, and Lowman was returned to the day shift "[s]hortly after being placed on the new shift." (*Id.* ¶ 51.)

Lowman retired on December 1, 2017. (*Id.* ¶ 36.) During her final months at MAA, the EEOC informed Lowman that efforts to conciliate her charge had been unsuccessful and that the EEOC was referring her case to the U.S. Department of Justice ("DOJ") so that DOJ could decide whether to file a civil suit on her behalf. (Compl. Ex. 3, ECF No. 1-5.) On February 2, 2018, DOJ notified Lowman that DOJ would not pursue her case but that she had a right to sue within ninety days. (Compl. Ex. 4, ECF No. 1-6.) Lowman exercised this right by filing suit on April 22. (*See* Compl., ECF No. 1.) Lowman amended her complaint several months later.

## II. *Motion to Dismiss*

Lowman sued MAA for sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a), 2000e-3(a), and the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't §§ 20-606(a), 20-606(f). In evaluating MAA's motion to dismiss, this Court addresses, first, the timeliness and, second, the merits of Lowman's claims. This Court concludes that Lowman's MFEPA discrimination claim was untimely but that Lowman sufficiently alleged the remaining claims: discrimination under Title VII and retaliation under both Title VII and MFEPA.

---

[1] Plaintiff mentions a July 17, 2017 meeting (*id.* at 32) and a July 7, 2017 meeting (*id.* at 49). Based on the description of the meetings, it appears that only one meeting occurred. Because this ten-day difference is not material, the Court will refer to this meeting as the July 17, 2017 meeting for now.

4

## A. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a plaintiff's complaint. *Presley v. Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A complaint need only satisfy Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, the plaintiff must allege sufficient facts, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility exists where the facts allow the court to reasonably infer that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But, inferring the "mere possibility of misconduct" is not enough to establish a plausible claim. *Id.* at 679. Moreover, a complaint offering "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). Here, the complaint must state a claim for relief that is plausible under Title VII. *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 584–85 (4th Cir. 2015).

## B. Timeliness

As a threshold matter, MAA asserts that Lowman's MFEPA claims are time barred. A court may dismiss a complaint on statute of limitations grounds "if the time bar is apparent on the face of the complaint." *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005).

MFEPA "includes a two-year statute of limitations period." *Bowen v. Md. Dep't of Pub. Safety and Corr. Servs.*, Civ. No. RDB-17-1571, 2018 WL 1784463, at *6 (D. Md. April 12, 2018). Under MFEPA, a complainant may file a civil suit alleging unlawful employment practices "if: (1) the complainant initially filed a timely administrative charge . . . under federal, State, or local law . . . ; (2) at least 180 days have elapsed since the filing of the administrative charge . . . ; and

5

(3) the civil action is filed within 2 years after the alleged unlawful employment practice occurred." Md. Code Ann., State Gov't § 20-1013(a); *see McCleary-Evans v. Md. Dep't of Transp.*, Civ. No. ELH-12-1550, 2015 WL 1285325, at *23 (D. Md. March 20, 2015) ("Under well settled principles of statutory construction, the use of the word 'and' between these three requirements unambiguously commands that a complainant meet all three requirements, not just any one of them"), *aff'd*, 631 F. App'x 178 (4th Cir. 2016).

Where a plaintiff fails to file MFEPA claims within two years of the alleged discrimination or retaliation, the claims are time barred and must be dismissed. *McCray v. Md. Dep't of Transp.*, 662 F. App'x 221, 225 (4th Cir. 2016) (affirming dismissal of MFEPA claims as untimely because plaintiff did not file the civil suit within two years of her termination); *see also Fenicle v. Towson Univ.*, Civ. No. ELH-18-917, 2018 WL 5885526, at *12 (D. Md. Nov. 8, 2018) ("Because Fenicle has not alleged any acts of discrimination occurring within the applicable two-year limitations period after March 30, 2016, his [MFEPA] claims . . . must be dismissed."). Even while awaiting an EEOC decision on related Title VII claims, a plaintiff must file civil suit for the MFEPA claims within the two-year window. *See Melendez v. Bd. of Ed. for Montgomery Cnty.*, Civ. No. DKC-14-3636, 2015 WL 3540947, at * 10 (D. Md. June 3, 2015) (rejecting plaintiff's argument that she did not file because of pending EEOC determination because plaintiff "provide[d] no explanation . . . for why she needed to wait for any EEOC action before pursuing her state law claims").[2]

---

[2] As the court explained in *Westmoreland v. Prince George's Cnty.*,

> [T]he exhaustion requirement in MFEPA is not as robust as the one under Title VII. Title VII requires a complainant to file an administrative charge and then permits a complainant to file suit only after the agency has investigated that charge and determined that it will not pursue it. *See* 42 U.S.C. § 2000e–5(f)(1). The MFEPA, by contrast, requires only that a complainant *file* an administrative charge, then wait 180 days before filing suit. With no requirement that a complainant see the state administrative process through to its end, the MFEPA's two-year statute of limitations is perhaps not the untenable requirement Westmoreland makes it out to be. To be sure, these differing approaches to

6

In alleging Count 1, Lowman claims that, sometime between March and July 31, 2015, she was denied a promotion because of her sex. (Am. Compl. ¶ 25.) Lowman timely filed with the EEOC pursuant to federal law, meeting the first requirement under MFEPA. (*Id.* ¶ 28.) But, Lowman did not file suit within two years (by July 31, 2017) as required by MFEPA. Therefore, Lowman's discrimination claim under MFEPA is time barred. In alleging Count 2, Lowman claims that MAA retaliated against her by returning her to shift work on July 17, 2017, and—around the same time—refusing to reclassify her position in preparation for a promotion opportunity. (*Id.* ¶ 46–49.) Because Lowman filed suit within two years of the alleged retaliation, her retaliation claim under MFEPA is not time barred.

MAA adds that "all time-barred claims must be dismissed" and notes that, under Title VII, a complainant must file an EEOC charge within 300 days of the alleged discrimination or retaliation. (Mot. Dismiss Mem. at 18–19, ECF No. 6-1.) MAA correctly states the filing deadline. *See* 42 U.S.C. § 2000e-5(e)(1); *Edelman v. Lynchburg Coll.*, 300 F.3d 400, 404 n.3 (4th Cir. 2002) (concluding that deferral jurisdictions, such as Maryland, allow complainants a 300-day window to file with EEOC). Lowman filed with the EEOC within 300 days and filed a civil suit within the 90-day window provided by the DOJ notice. (Am. Compl. ¶ 25, 28; Compl. Ex. 1; Compl. Ex. 4.) Therefore, Lowman fulfilled the exhaustion requirements and timely filed her Title VII claims.[3]

---

exhaustion and the statute of limitations may place plaintiffs in the position of having to decide between pursuing remedies under the federal statutory scheme or the state statutory scheme, but to interpret MFEPA otherwise would ignore the plain language of the statute.

*Westmoreland v. Prince George's Cnty.*, Civ. No. TDC-14-0821, 2015 WL 996752, at *13 (D. Md. March 4, 2015).
[3]  There is no exhaustion issue: Lowman filed the discrimination claim with the EEOC and properly raised the retaliation claim in district court. *See Wright v. Kent Cnty. Dep't of Soc. Servs.*, Civ. No. ELH-12-3593, 2014 WL 301026, at *21 (D. Md. Jan. 24, 2014) ("[T]he Fourth Circuit has made clear that a plaintiff need not exhaust administrative remedies for retaliation related to an EEOC complaint and, instead, may raise a retaliation claim for the first time in federal court.").

## C. The Merits

This Court continues to the merits of the sex discrimination claim under Title VII and the retaliation claim under Title VII and MFEPA. "MFEPA 'is the state analogue of Title VII.'" *Royster v. Gahler*, 154 F. Supp. 3d 206, 215 (D. Md. 2015) (quoting *Alexander v. Marriott Int'l, Inc.*, Civ. No. RWT-09-2402, 2011 WL 1231029, at *6 (D. Md. March 29, 2011)); *see also Molesworth v. Brandon*, 672 A.2d 608, 632–33 (Md. 1996) (noting that the Maryland anti-discrimination legislation was modelled after the federal counterpart). Therefore, courts judge discrimination and retaliation claims brought under MFEPA by the same standards as those same claims brought under Title VII. *Hawkins v. Leggett*, 955 F. Supp. 2d 474, 496–97 (D. Md. 2013); *see Churchill v. Prince George's Cnty. Pub. Schs.*, Civ. No. PWG-17-980, 2017 WL 5970718, at *5 n.6 (D. Md. Dec. 1, 2017) (analyzing Title VII and MFEPA claims together). Analyzing the federal and Maryland law claims together, this Court concludes that Lowman sufficiently alleged discrimination under Title VII and retaliation under Title VII and MFEPA.

### 1. Sex Discrimination

Lowman alleges that MAA denied her a promotion because of her sex. Title VII makes it unlawful for an employer to discriminate against any individual because of her sex with respect to her "compensation, terms, conditions, or privileges of employment"; or "to limit, segregate, or classify" an employee or job applicant because of her sex "in any way which would deprive or tend to deprive [her] of employment opportunities or otherwise adversely affect [her] status as an employee." 42 U.S.C. § 2000e-2(a). Where, as here, a plaintiff does not put forward direct allegations of discriminatory motive, the burden-shifting framework—established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973)—applies. *Evans v. Techs. Applications & Servs.*, 80 F.3d 954, 959 (4th Cir. 1996). Under the framework, plaintiff carries the initial burden

8

of establishing a prima facie case; second, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the alleged unlawful practice; third, the plaintiff has an opportunity to show that the employer's stated reason is pretextual. *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005).

At the motion to dismiss stage, however, a plaintiff need only allege a plausible claim of disparate treatment. *Woods v. Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017); *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) ("This Court has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss."). "Although [a] [p]laintiff is not required to show a prima facie case to survive a motion to dismiss, the elements of a prima facie claim are helpful in analyzing the plausibility of the claim as alleged." *Brown v. Hous. Auth. of Balt. City*, Civ. No. MJG-16-3616, 2017 WL 3189447, at *5 n.5 (D. Md. July 26, 2017). Consequently, a plaintiff claiming discrimination by failure to promote may allege the prima facie elements. The elements of a failure to promote claim are: "(1) [the plaintiff] is a member of a protected class; (2) her employer had an open position for which she applied or sought to apply; (3) she was qualified for the position; and (4) she was rejected for the position under circumstances giving rise to an inference of unlawful discrimination." *Evans*, 80 F.3d at 959–60.

Lowman alleges the first three elements of a failure to promote claim. In turn, MAA concedes that Lowman "is a member of a protected class (female), she applied for the position, and MAA found her qualified to interview for the position of Division Chief." (Mot. Dismiss Am. Compl. Mem. at 7, ECF No. 17-1; *see also* Opp. Mot. Dismiss Am. Compl. at 2–3, ECF No. 20.) Indeed, Lowman, as a female, is a member of a protected class, and she applied for the open position of Division Chief EMS. (Am. Compl. ¶ 1, 19.) She met the enumerated preferred

9

qualifications and received an interview based on those qualifications. (*Id.* ¶ 39.) Lowman's allegation that she was more experienced than Packard also indicates that she was qualified for the position. *See Bailey v. Ares Grp., Inc.*, 803 F. Supp. 2d 349, 355 (D. Md. 2011) (finding allegations sufficient to show employee was qualified for promotion where she had twelve more years of experience in the security field than the male selected for the position). Thus, Lowman sufficiently alleges the first three elements of a failure to promote claim.

MAA disputes the fourth element, arguing that Lowman failed to allege circumstances giving rise to the inference of unlawful discrimination. (Mot. Dismiss at 8.) Lowman counters that the fact that she was better qualified than the chosen candidate sufficiently gives rise to an inference of unlawful discrimination. (Opp. Mot. Dismiss at 10–11, ECF No. 11.) Allegations that a plaintiff is better qualified than the selectee does give rise to such an inference. "[R]elative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision." *Evans*, 80 F.3d at 960. It follows that, where a plaintiff alleges that she was the better qualified candidate for a promotion and yet was denied it, circumstances giving rise to an inference of discrimination exist. *See Obi v. Anne Arundel Cnty.*, 142 F. Supp. 2d 655, 662 (D. Md. 2001) (holding plaintiff established fourth element where he was determined the best-qualified candidate during the objective stage of the selection process, then determined the third best candidate after the subjective interview stage).

For example, in *Bailey*, the court found sufficient allegations of circumstances giving rise to an inference of unlawful discrimination. 803 F. Supp. 2d at 355. There, the plaintiff alleged that her employer offered her two promotions—one in May and one in July of the same year—then rescinded both promotions, informing her that he was promoting a male employee instead. *Id.* When plaintiff asked her employer why the promotions were being rescinded, the employer

10

told her she did not have enough experience. *Id.* Plaintiff alleged that she had fifteen years' experience in the field, whereas the male employee who was promoted, had only three years' experience. *Id.* Plaintiff also alleged that the employer had stated that he did not believe women should hold managerial positions. *Id.* The court held that this statement and plaintiff's more substantial experience gave rise to an inference that "her promotions were rescinded because she was a woman." *Id.*

Lowman primarily alleges that she was "the best-qualified applicant." (Am. Compl. ¶ 40.) Lowman met "the minimum preferred qualifications" and had "more years of experience" overall. (*Id.* ¶ 40.) By contrast, Packard did not meet the preferred qualification of four years or more as a career fire officer. (*Id.* ¶ 41.) The MAA executive officers explicitly sought applicants with experience as a lieutenant, as they indicated by listing it among "Preferred Qualifications." (*Id.* ¶ 21.) The parties debate the meaning of "Preferred Qualifications," but the job posting matters to this analysis in that it indicates how MAA intended to evaluate candidates. In determining relative qualifications, the Court must look from the perspective of the employer rather than the employee. *Anderson*, 406 F.3d at 269 ("Miss Anderson cannot establish her own criteria for judging her qualifications for the promotion. She must compete for the promotion based on the qualifications established by her employer."); *see also Evans*, 80 F.3d at 960–61 ("'It is the perception of the decision maker which is relevant,' not the self-assessment of the plaintiff.") (quoting *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980)).

Lowman argues that she was also "the best-qualified applicant" because, during her time as Acting Captain, she organized the EMS office and became familiar with its workings. (Am. Compl. ¶ 40.) When Packard was selected as Division Chief, she trained him because he lacked her experience with the office he would be overseeing. (*Id.* ¶ 40–41.) MAA argues that this

11

allegation is irrelevant because the training occurred after the job selection process. (Mot. Dismiss Am. Compl. Mem. at 9–10.) But, the allegation is relevant to determine whether Lowman was more qualified for the position than Packard. *See, e.g., Williams v. High Point*, Civ. No. FWB-98-1029, 1999 U.S. Dist. LEXIS 21378, at *27 (M.D.N.C. Nov. 2, 1999) ("The fact Plaintiff was coupled with Stephen Thomas in order to receive appropriate training and instruction underscores the disparity of their qualifications and belies Plaintiff's argument that the two were similarly situated with regard to their experience and training as fire inspectors.").

Lowman does not make mere conclusory allegations, as MAA asserts. (Mot. Dismiss Am. Compl. Mem. at 7–8.) For example, Lowman's factual allegations are distinguishable from the allegations, made in *McCleary-Evans*, which the Fourth Circuit affirmed were too conclusory to sufficiently state a discrimination claim. 780 F.3d at 588. In *McCleary-Evans*, the plaintiff "did not include any allegations regarding the qualifications or suitability of the persons hired to fill the two positions." *Id.* at 584. The court noted that a comparison between the two applicants' years of experience was "precisely the kind of allegation that [wa]s missing." *Id.* at 586. Such an illustrative comparison exists in this case. Here, MAA explicitly sought applicants with four years as a career fire officer: Lowman alleges that she held the position of lieutenant for fourteen years; whereas, Packard held the position of lieutenant for less than four. (Am. Compl. ¶ 26.)

Lowman also alleges that her panel was not diverse. MAA internal hiring directions require an interview panel to consist of "at least three people one of whom should be a minority and one of whom should be female," and her panel comprised three white male executive officers and one African-American female administrative assistant. (*Id.* ¶ 23–24.) Although not in fact a violation of the internal guidelines, the composition of Lowman's panel appears—at least to Lowman—to violate the spirit of the rule. In general, lack of diversity on a panel can indicate

circumstances giving rise to an inference of discrimination. *See Obi*, 142 F. Supp. 2d at 662 (inferring discrimination where Nigeria-born plaintiff was the most qualified candidate after objective testing but was rated third most qualified after being interviewed subjectively by an all-white, American-born panel). Taken together, Lowman's allegations—that she was the best-qualified candidate, that she (and not the selectee) met the enumerated preferred qualifications, that she trained the selectee in the position, and that her panel was not diverse—indicate circumstances giving rise to an inference of discrimination.

Reading the allegations of the complaint as a whole, as the Court must, *see Clear Channel Outdoor, Inc. v. Mayor & City Council of Balt.*, 22 F. Supp. 3d 519, 525 (D. Md. 2014), this Court concludes that Lowman has sufficiently pleaded sex discrimination under Title VII.

### 2. *Retaliation*

Lowman claims that, after MAA received notice of her EEOC charge of discrimination, MAA retaliated against her in violation of Title VII and MFEPA. Both federal and Maryland law prohibit an employer from discriminating against an employee because the employee has opposed a practice made unlawful by the statute. 42 U.S.C. § 2000e-3(a); Md. Code Ann., State Gov't §§ 20-606(f). As with discrimination claims, "[t]he series of proofs and burdens outlined in *McDonnell Douglas* apply to retaliation claims." *Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1228 (4th Cir. 1998). To establish a prima facie case of retaliation, a plaintiff must prove three elements: (1) "that she engaged in protected activity"; (2) "that an adverse employment action was taken against her"; and (3) "that there was a causal link between the protected activity and the adverse employment action." *Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir. 2004). Once again, although a plaintiff need not allege a prima facie case to survive a motion to dismiss, an analysis

of the prima facie elements helps determine whether the claim is plausible. *Brown*, 2017 WL 3189447, at *5 n.5.

Lowman sufficiently alleges that she engaged in a protected activity because she filed an EEOC claim of discrimination. *See Karpel*, 134 F.3d at 1229 ("[Plaintiff] clearly engaged in protected activity when she filed her EEOC complaint . . . ."). This first element is undisputed.

In support of the second element, Loman alleges that MAA briefly returned her to the less favorable twenty-four-hour shift work, gave her short notice of her change to shift work, and ignored her request for job reclassification. (Am. Compl. ¶ 46–51.) Employer actions are materially adverse when they are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006); *see Niner v. Garrett Cnty. Pub. Works*, Civ. No. ELH-17-2948, 2018 WL 3869748, at *17 (D. Md. Aug. 15, 2018) (concluding "loss of supervisory responsibility may constitute an adverse action"). "[M]aterially adverse actions do not include 'trivial' harms" but, rather, those harms which produce an injury. *Cepada v. Bd. of Educ. of Balt. Cnty.*, 814 F. Supp. 2d 500, 515 (D. Md. 2011). For example, it is not materially adverse to criticize, or even yell at, an employee; however, it is materially adverse to exclude an employee from meetings, suspend her, or place her on administrative leave such that she loses pay. *Id.* at 515–16.

Turning to the allegations, the Court concludes that Lowman alleged at least one materially adverse action. First, Lowman's transfer to the twenty-four-hour shift does not appear so harmful as to injure or dissuade a reasonable employee from complaining of discrimination. *See Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999) (holding that reassignment can only constitute an adverse action where it significantly and detrimentally affects the employee because Congress could not have intended Title VII to "provide redress for trivial discomforts endemic to

employment"). That is not to say that switching to a twenty-four-hour shift could not significantly and detrimentally affect an employee but, without further allegations, Lowman has not pleaded that her reassignment had materially adverse consequences. *See Green v. Harvey*, Civ. No. AW-03-1839, 2005 WL 1308537, at *6 (D. Md. May 31, 2005) (holding change in work hours did not arise to adverse action because there was no "significant modification in work schedule"—employee was not required to work more hours nor a less regular schedule). Here, the transfer is not likely to constitute such an adverse action because Lowman was returned to the day shift "[s]hortly after being placed on the new [twenty-four-hour] shift." (Am. Compl. ¶ 51.) Second, receiving little notice of a change in work schedule is even less injurious than having one's work schedule altered. Both actions are those "endemic to employment." *Boone*, 178 F.3d at 256.

By contrast, the allegation that MAA refused Lowman a job reclassification rises to the level of an adverse action. Lowman alleges that "a job posting was being created for a Captain EMS position and reclassification had to take place." (Am. Compl. ¶ 31.) "Despite following all requirements and sending it through the chain of command, [] Lowman was never informed on the status of her request. (*Id.* ¶ 47.) And, "several other employees had reclassifications completed" while Lowman awaited a response. (*Id.* ¶ 48.) Because Lowman needed the job reclassification to apply for her promotion, MAA's refusal to reclassify her job inhibited her opportunities and career prospects. *See, e.g., Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 780 (D. Md. 2010) (concluding that, where an employer impeded an employee's efforts to communicate her interest in an open position, the employee suffered a materially adverse action). Such a barrier to promotion opportunities would dissuade a reasonable employee from complaining of discrimination. *See Burlington*, 548 U.S. at 57. Consequently, Lowman has alleged at least one materially adverse action.

To establish the third element of retaliation, a plaintiff must show a causal link between the protected activity and the adverse action: "the employer must have taken the adverse action *because* the plaintiff engaged in the protected activity." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998). Lowman relies solely on a temporal nexus theory, alleging that the EEOC determination letter arrived at MAA just before MAA changed Lowman's schedule and denied her a job reclassification. (Am. Compl. ¶ 46, 49.) To establish causation by mere temporal proximity, the proximity must be "very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). "[A] causal connection may exist where the employer takes adverse employment action against an employee shortly after learning of the protected activity." *Penley v. McDowell Cnty. Bd. of Educ.*, 876 F.3d 646, 656 (4th Cir. 2017) (holding that "[s]tanding alone, knowledge [of the protected activity] eight to nine months prior is not 'very close'"). But, at the prima facie stage—and, even more so, at the motion to dismiss stage—establishing causation "is not an onerous burden." *Strothers v. Laurel*, 895 F.3d 317, 335 (4th Cir. 2018).

Lowman alleges that she filed with EEOC in August 2015, (Am. Compl. ¶ 28); that EEOC sent its determination letter to MAA in June 2017, (*id.* ¶ 34); and, that MAA retaliated against her in July 2017 (*id.* ¶ 32). MAA argues that two years—the time that elapsed between Lowman's EEOC filing and the alleged retaliation—is too attenuated to establish causation by temporal proximity alone. (Mot. Dismiss at 15–18.) But, the proximity is measured from when the employer learns of the protected activity, not from the protected activity itself. *Pascual v. Lowe's Home Ctrs., Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006); *see Dowe*, 145 F.3d at 657 ("Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case.").

16

One month is a sufficiently short time to establish a causal link by temporal proximity alone. The Fourth Circuit has held that three to four months is too long. *Pascual*, 193 F. App'x at 233. Two months, on the other hand, is sufficiently short. *Vicino v. Maryland*, 982 F. Supp. 2d 601, 614 (D. Md. 2013); *see also, e.g.*, *Romeo v. APS Healthcare Bethesda, Inc.*, 876 F. Supp. 2d 577, 588–89 (D. Md. 2012) (finding a two-month interval sufficed to show the "little proof" required to establish causation for a prima facie case of retaliation). A single month is, therefore, "very close," and close enough to establish causation at the pleading stage. *Breeden*, 532 U.S. at 273. Nothing in the complaint indicates that MAA or its officers knew about the EEOC filing prior to June 2017. (*See* Opp. Mot. Dismiss at 15.) Viewing the allegations in the light most favorable to Lowman, this Court assumes that MAA learned of the EEOC filing in June 2017. As such, the alleged adverse actions occurred within a month of MAA learning of Lowman's protected activity. Thus, Lowman has alleged sufficient facts to establish a causal connection between her protected activity and the retaliation.

This Court concludes that Lowman sufficiently pleaded retaliation under Title VII and MFEPA and, consequently, denies MAA's motion to dismiss those claims.

### III. *Motion for Summary Judgment*

In the alternative, MAA moves for summary judgment, attaching six exhibits and arguing that the exhibits show there is no genuine issue of material fact and that MAA is entitled to judgment as a matter of law. Lowman opposes MAA's motion for summary judgment and moves to stay consideration of summary judgment pursuant to Federal Rule of Civil Procedure 56(d). This Court will grant Lowman's motion to stay and deny without prejudice MAA's motion for summary judgment.

17

"Ordinarily, summary judgment is inappropriate 'where the parties have not had an opportunity for reasonable discovery.'" *Sager v. Hous. Comm'n of Anne Arundel Cnty.*, 855 F. Supp. 2d 524, 542 (D. Md. 2012) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011)). Even so, the party opposing summary judgment cannot complain later that summary judgment was granted without discovery unless that party attempted to oppose summary judgment, claiming that more time was needed for discovery. *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002). "To raise adequately the issue that discovery is needed, the [summary judgment opponent] typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f))," proffering specific reasons why, without discovery, it cannot present facts essential to its opposition. *Sager*, 855 F. Supp. 2d. at 542. The affidavit must identify facts essential to oppose summary judgment in order to justify the court in denying summary judgment on the grounds that additional discovery is necessary. *Id.* at 543. Therefore, Rule 56(d) neither authorizes "fishing expedition[s]" nor "discovery for discovery's sake." *Gardner v. United States*, 184 F. Supp. 3d 175, 184 (D. Md. 2016) (citing *Agelli v. Sebelius*, Civ. No. DKC 13–497, 2014 WL 347630, at *9 (D.Md. Jan. 30, 2014)).

That being said, "a district court should exercise caution in ruling on summary judgment in the face of a Rule 56(d) request." *Gardner*, 184 F. Supp. 3d at 184. Where a Rule 56(d) request is "grounded in speculation" or "would amount to a fishing expedition," courts tend to deny the request. *Gardner*, 184 F. Supp. 3d at 185 (denying a Rule 56(d) request and exercising its discretion under Rule 12(d) to convert the motion to dismiss into a motion for summary judgment). But, where the affidavit points out genuine disputes of material fact "which discovery could reasonably be expected to address," courts tend to grant the request. *See, e.g., Ass'n of Car Wash*

*Owners Inc. v. New York*, Civ. No. 17-1849, 2018 WL 6518086, at *5 (2d Cir. Dec. 12, 2018) (reversing denial of Rule 56(d) request for abuse of discretion).

In the employment discrimination context, deciding on summary judgment is particularly disfavored. *Evans*, 80 F.3d at 958 ("[C]ourts must take special care when considering a motion for summary judgment in a discrimination case because motive is often the critical issue . . . ."); *see, e.g., Meloff v. New York Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir. 1995) (holding that the grant of summary judgment was premature in discrimination case where employer presented a reason for discharging employee and employee was not given the opportunity to discover factual disputes in relation to the genuine issue of whether that reason was pretextual); *Hudson v. S. Ductile Casting Corp.*, 849 F.2d 1372, 1376 (11th Cir. 1988) (holding this was one of the rare discrimination cases in which full discovery occurred and the court was equipped to decide on summary judgment).

Here, Lowman has attached an affidavit to her Rule 56(d) motion. *Cf. Sager*, 855 F. Supp. 2d at 543 (holding that the Rule 56(d) request was inadequate because plaintiff failed to attach an affidavit and proffered only legal rather than factual disputes). In the motion, Lowman lists factual disputes regarding the motives of the MAA executive officers: for example, the officers' awareness of Lowman's EEOC complaint; the interview panel's assessment of the candidates; and the selection of the interview panel itself. (Mot. Stay at 2, ECF No. 12.) The affidavit specifies the type of evidence Lowman would request during discovery to resolve these disputes. *See Ahmed v. Salvation Army*, Civ. No. CCB 12–707, 2012 WL 6761596, at *10 (D. Md. Dec. 28, 2012) (noting that the affidavit "cannot conclusorily state that additional discovery is required" and, instead, "must identify the probable facts not yet available"), *aff'd*, 549 F. App'x 196 (4th Cir. 2013) (per curiam). Thus, the affidavit contains issues that are both genuinely disputed and could reasonably be resolved by discovery.

19

Further, Lowman's request is not speculative. *Cf. Gardner*, 184 F. Supp. 3d at 185 (denying request because plaintiff expressed mere hope that discovery would yield evidence to establish claim). In *Ahmed*, the court denied the Rule 56(d) motion because it concluded that the "cause of action would fail under Rule 12(b)(6)" and that "the Rule 56(d) motion [was] simply 'fishing' for facts to support a claim." 2012 WL 6761596, at *10. This case is different. Unlike in *Ahmed*, in which the court held that plaintiff failed to state a claim, Lowman sufficiently alleges discrimination and retaliation. Lowman's request for discovery rests on firmer ground and specifies disputed issues in need of resolution.

In keeping with precedent in the employment discrimination context, this Court is hesitant to proceed to summary judgment without giving Lowman the opportunity for discovery. Accordingly, this Court will grant Lowman's motion to stay and deny without prejudice MAA's motion for summary judgment.

## *IV. Conclusion*

For the foregoing reasons, an Order shall enter granting MAA's motion to dismiss as to the MFEPA discrimination claim; denying MAA's motion to dismiss as to the Title VII discrimination claim, the Title VII retaliation claim, and the MFEPA retaliation claim; granting Lowman's motion to stay consideration of summary judgment; and denying without prejudice MAA's motion for summary judgment.

DATED this _8_ day of January, 2019.

BY THE COURT:

_James K. Bredar_
James K. Bredar
Chief Judge

20